[No. 7167. Decided February 14, 1908.]

JOHN O'CONNOR, *Appellant*, v. BESSIE SLATTER, *Administratrix of the Estate of John Slatter, Deceased, Respondent.*[1]

WITNESSES — COMPETENCY — TRANSACTIONS WITH DECEASED. A widow, defending as executrix of her deceased husband's estate, does not waive her right to object to evidence by the adverse party as to transactions with the deceased by the fact that she fully testified to the same, since under our statute her testimony was competent and not barred by the statute.

SAME. The prohibition of the statute against the evidence of an adverse party as to transactions had with a person deceased does not exclude evidence as to who was or was not present at the time certain notes were endorsed by the deceased.

APPEAL—REVIEW—CORRECTION OF ERROR BY ADMISSION OF OTHER EVIDENCE. Error in excluding evidence of a witness to contradict evidence of the adverse party that she was present at a certain transaction, is not cured by testimony of the witness theretofore admitted enumerating the persons who were present without any mention of the party claimed to be present.

[1]Reported in 93 Pac. 1078.

WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED.  Testimony by the adverse party as to whether notes had been changed since he received them from a person since deceased, is inadmissible, because testimony of a transaction had with the deceased, being indirectly testimony as to their condition when received from the deceased.

APPEAL—REVIEW—HARMLESS ERROR — INSTRUCTIONS — BILLS AND NOTES—ENDORSEMENT.  In an action upon promissory notes endorsed by defendant's decedent, in which the question of liability as endorser was not involved, an ambiguous instruction, to the effect that endorsement and delivery were necessary to transfer complete title to the note, is not prejudicial error, in the absence of a request for more specific instructions as to the necessity and purpose of an endorsement.

BILLS AND NOTES—GUARANTEE—PLEADING—ANSWER—FRAUD—IMMATERIAL ISSUES.  In an action upon a written guarantee of a note, which was denied by the answer, an affirmative answer admitting an endorsement in blank and alleging that the written guarantee was thereafter fraudulently stamped on the note and setting forth the fraudulent means whereby the endorsement in blank was secured and the previous fraud perpetrated on the defendant, adds nothing to the denials of the answer, and it is error to submit the affirmative defense to the jury, no affirmative relief having been asked.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered October 14, 1907, upon the verdict of a jury rendered in favor of the defendant, in an action on promissory notes.  Reversed.

*Merritt, Oswald & Merritt,* for appellant.
*Roche & Onstine,* for respondent.

RUDKIN, J.—This case was before this court on a former appeal where a full statement of the issues will be found. 46 Wash. 308, 89 Pac. 885.  A retrial resulted in a verdict and judgment in favor of the defendant, from which the present appeal is prosecuted.

The principal errors assigned on this, as on the former appeal, relate to the rulings of the court on the admission of testimony.  On the former appeal it was contended that the

surviving wife was not a competent witness to testify to a transaction between a third person and her deceased husband in an action brought by such third person against the surviving wife as executrix of the deceased husband's estate. This contention we refused to sustain. It is now contended that by testifying fully to such transaction the surviving wife waived her right to object to the competency of the adverse party to testify to the same transaction. This proposition, thus broadly stated, we likewise refuse to sustain. Cases have been cited from other jurisdictions sustaining the contention of the appellant in this regard, but they are all based on statutes differing materially from the statute of this state. As said by us on the former appeal:

"No statute exactly like ours has been called to our attention by the parties to this appeal; and upon independent investigation we have been unable to find any using the same language in the same order as ours. The authorities in other states upon similar statutes shed but very little light upon the question presented here."

Doubtless one of the objects of the statutes is, "To prevent interested parties from testifying to transactions and statements made by a deceased person when there might be no person to rebut such testimony," as declared in the former opinion, but manifestly the operation of the statute does not depend upon whether there are, or are not, others who may testify to the transaction or statement. Death has sealed the lips of one of the parties and the statute imposes the same silence upon the other. The prohibition of the statute is absolute and unconditional. It admits of no qualification or exception, and it is not the province of this court to add to it or take from it. We are satisfied, therefore, that the court below correctly ruled that the appellant was not competent to testify to any transaction had with or statement made by the deceased, regardless of the testimony that may have been given by other witnesses.

The prohibition of the statute, however, extends only to transactions had by the appellant with the deceased, or to statements made to the appellant by the deceased. It does not extend to every fact to which the deceased might testify if living, and we are satisfied that the court below extended the prohibition too far. The respondent testified that she was present at the appellant's bank when the notes in suit were endorsed, and testified fully to all that transpired there. The appellant was called as a witness in his own behalf, and was asked the following question: "I will ask you to state whether or not this defendant was present at the time the notes in suit were endorsed by John Slatter?" To this question an objection was interposed and sustained on the ground that it related to a transaction with a deceased person. This ruling was plainly erroneous. The testimony was important as it tended directly to contradict the testimony of the respondent previously given, and by no possible rule of construction can it be held that the testimony offered related to a statement made by or transaction had with the deceased. Nor was the error cured by the following testimony admitted before the respondent had testified:

"Q. I will ask you who was present at the time John Slatter signed his name on these notes?" A. Myself, John Slatter, Charles Graves and James O'Connor."

By a process of elimination the jury might determine from this answer that the respondent was not present, but the testimony did not have the force or effect of a direct denial that she was present after she had testified in her own behalf. The appellant was further asked whether the notes had been changed since he received them from the deceased. This, in our opinion, was an indirect way of asking what their condition was when received from the hands of the deceased, and was a palpable attempt to evade the statute. The objection was therefore properly sustained. It is contended that other testimony was excluded tending to show statements made by

the respondent and transactions had with her and not with the deceased, but what we have said will be a sufficient guide for the court on a retrial.

The court charged the jury as follows: "In order to complete title—to transfer the title—it was necessary that the person holding the note must place his name upon the back of it and deliver it to the purchaser"; and the giving of this instruction is assigned as error. The instruction is at least ambiguous. No doubt a promissory note may be transferred without endorsement, the same as any other article of personal property, either under our statute, Laws 1899, p. 349, § 49, or independent of statute. At the same time there is, or may be, a vast difference between the rights of the parties under a transfer made with or without endorsement. The question of the liability of an endorser was not involved in this case, however, and we are unable to say that the instruction was prejudicial. If the appellant desired a more specific instruction on the question of the necessity for or purpose of an endorsement, he should have requested it.

The appellant finally contends that inconsistent defenses were interposed. The issues in the case are well summarized in the respondent's brief as follows:

"Appellant sued the respondent as the administratrix of an estate, upon a written contract of guaranty, wherein he alleges that the deceased in his lifetime guaranteed in writing the payment of certain promissory notes which he sets out in full, by signing a written guaranty indorsed on the back of said notes. The respondent answers admitting the execution of the notes and that he indorsed them in blank and delivered them to the appellant, but denies that the contract of guaranty was upon the notes at the time he indorsed them. Respondent then alleges fraud as an affirmative defense, by setting forth the following facts: that the deceased in his lifetime was the owner of a sum of money which he delivered to the appellant as his agent, and that appellant, as such agent, agreed to loan said money, for deceased, upon good real estate security and take properly executed notes and mortgages therefor so that

deceased's money would be well secured; that the deceased was a man of no education and experience with business methods, especially loaning money; that appellant was a banker and shrewd business man and agreed with the deceased that he would loan his money for him upon good real estate security and that deceased fully trusted the appellant and relied implicitly upon the honor and ability of the said appellant in all their transactions; that appellant shortly after he had received the decedent's money to loan, gave to decedent the promissory notes mentioned in appellant's complaint, which were made payable to decedent, and then and there informed him that said notes were well secured by real estate mortgages upon farm lands in Lincoln county, and that said decedent believing the statements of appellant to be true and relying upon them, accepted said notes from appellant; that after said notes had been delivered to said decedent, said appellant sold to said decedent certain real estate and as a part payment therefor decedent indorsed in blank and delivered to appellant all of said notes except the note mentioned in appellant's first cause of action, and that at the time decedent indorsed said notes in blank and delivered them to appellant, appellant informed decedent that by indorsing his name in blank on said notes he was merely transferring his interest in said notes to appellant and was incurring no liability thereon; that at the time decedent indorsed said notes he believed that said notes were secured by good real estate mortgages, and that the indorsement of decedent upon said notes was procured by appellant with a fraudulent design of holding decedent responsible therefor; that decedent never knew during his lifetime that said notes were not secured by good real estate mortgages; that in truth and fact none of said promissory notes were secured by mortgages of any kind and that said appellant did not, in fact, loan said decedent's money, but that appellant, who was then booming the town of Downs, contracted to sell the makers of said notes certain real estate in Downs for exorbitant and unreasonable prices, taking a small cash payment, which he put in his pocket and then accepted these notes in lieu of the balance of said purchase price which notes he turned over to decedent in lieu of decedent's money which he had agreed to loan as aforesaid for decedent; the appellant at all times holding the title to said real estate which he had agreed to sell as aforesaid, in his own name and said contracts

of sale being oral contracts entered into by appellant and the makers of said notes, and that appellant thereby appropriated decedent's money to his own use; that some time after said notes had been delivered to appellant and indorsed in blank by decedent, the appellant by means of a stamp placed a printed guaranty above the name of the decedent; that the promissory note mentioned in appellant's first cause of action was delivered to appellant for collection, appellant informing said decedent at the time he received said note for collection that it was necessary for decedent to indorse his name on the back thereof in order that he could collect the same for decedent and that thereafter appellant wrongfully placed the stamp of guaranty above his signature and claimed to be the owner thereof."

We cannot say that these defenses are inconsistent, but it seems to us that the affirmative matter adds nothing to the previous denials. The action was brought on a written guarantee, and if there was no such guarantee the action must fail. The affirmative matter was not set forth as a basis for affirmative relief, and the fact that the appellant obtained a blank endorsement from the deceased by fraudulent means, or the fact that the appellant had perpetrated some previous fraud on the deceased, would seem utterly immaterial. In other words, if the guarantee set forth in the complaint was never executed, any different transaction between the parties as a matter of pleading was irrelevant. The fraud alleged was not connected with the contract in suit. *Puget Sound Iron Co. v. Worthington,* 2 Wash. Ter. 472, 7 Pac. 882, 886; *Trumbull v. Jackman,* 9 Wash. 524, 37 Pac. 680; *Williams v. Ninemire,* 23 Wash. 393, 63 Pac. 534; *Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586.

For the error in excluding testimony and submitting the affirmative defense to the jury, the judgment is reversed and a new trial ordered.

HADLEY, C. J., DUNBAR, MOUNT, FULLERTON, and CROW, JJ., concur.